**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

ANTHONY WOMICK,
**Individually, and on Behalf of**
**All Others Similarly Situated,**

                    **Plaintiff,**

v.                                 **Case No. 21-CV-00574-NJR**

THE KROGER CO.,

                    **Defendant.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Defendant The Kroger Co.'s ("Kroger") Motion to Dismiss (Doc. 12) Plaintiff Anthony Womick's Complaint (Doc. 1-1). For the reasons set forth below, Defendants' Motion to Dismiss is granted in part and denied in part.

### BACKGROUND

Womick alleges that Kroger manufactures, packages, advertises, distributes, and sells various types of ground coffee under its own private label brand in canisters. (Doc. 1-1, p. 5). Kroger represents the number of cups that can be made depends on the size of the canisters:

- The 11.5-ounce (326 g.) canisters represent they can make about 90 cups.
- The 24-ounce (680 g.) canister represent they can make about 185 cups.
- The 25-ounce (708 g.) canisters represent they can make about 195 cups.
- The 29-ounce (822 g.) canisters represent they can make about 225 cups.
- The 30.5-ounce (864 g.) canisters represent they can make about 235 cups.

(*Id.* at pp. 6–8). Brewing instructions on the back of Kroger's canisters provide two methods: (1) to make one cup, the directions state the consumer is to use one rounded tablespoon of coffee for each six fluid ounces of cold water; and (2) to make ten cups, the consumer is to use a half cup of coffee. (*Id.* at p. 8).

Womick asserts these representations are false even when following Kroger's brewing instructions. (*Id.* at pp. 8–9). Following Kroger's instruction to use one rounded tablespoon, the 30.5-ounce canisters "will produce no more than, and probably less than," approximately 173 cups of coffee, not 235 cups as the canister indicated. (*Id.*). Womick provided the below table showing the maximum number of cups Kroger represents can be made using the one-cup method, compared to the actual maximum number that the canister will make using a 5-gram, not rounded, tablespoon, along with the difference (number of cups the consumer paid for but did not receive):

| Class Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 11.5 oz. | 90 cups | 65 cups | 25 cups |
| 24 oz. | 185 cups | 136 cups | 49 cups |
| 25 oz. | 195 cups | 141 cups | 54 cups |
| 29 oz. | 225 cups | 164 cups | 61 cups |
| 30.5 oz. | 235 cups | 173 cups | 62 cups |

(*Id.* at p. 10).

Under the alternative instructions for making ten cups of coffee, Womick claims the Class Products also fail to make the number of cups represented on the canister. Assuming one tablespoon of ground coffee weighs five grams, there are eight tablespoons in a half cup, meaning a half cup of ground coffee weighs forty grams. (*Id.* at

p. 10). Womick provided another table to demonstrate that Kroger's ten cup instruction additionally produces less than the amount represented on the canister:

| Class Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 11.5 oz. | 90 cups | 81.5 cups | 8.5 cups |
| 24 oz. | 185 cups | 170 cups | 15 cups |
| 25 oz. | 195 cups | 177 cups | 18 cups |
| 29 oz. | 225 cups | 205.5 cups | 19.5 cups |
| 30.5 oz. | 235 cups | 216 cups | 19 cups |

(*Id*.).

Womick alleges that he regularly purchased Kroger's 29 oz. and 30.5 oz. products from 2020–2021. (*Id*. at p. 13). Prior to making these purchases, Womick read the representation on the label regarding the number of cups that could be made from Kroger's products, and at all times, Womick believed and had a reasonable expectation that the labeling on the products was truthful and accurate. (*Id*.). Womick proclaims he typically followed Kroger's 10-serving instructions when making coffee. (*Id*.). Finally, Womick claims that, as a direct result of Kroger's misrepresentations of the number of cups that can be made from its products, he has been deprived of the benefit of their bargain in purchasing these products because the products had less value than represented. (*Id*. at pp. 13–14).

Womick brings a class action with three claims against Kroger: (1) Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA") By Means of Unfair Business Practices; (2) Violation of the ICFA By Means of Deceptive Acts or Practices; and (3) Unjust Enrichment. (Doc. 1-1). Kroger timely moved to dismiss pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 12).

ANALYSIS

**I.      Defendant's Request for Dismissal Under Federal Rules of Civil Procedure 8 and 9(b)**

To state a claim under ICFA, a plaintiff must plead (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred in the course of conduct involving the trade or commerce; and (4) defendant's deceptive or unfair practice proximately caused plaintiff actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

The Supreme Court of Illinois has held, and the Seventh Circuit has followed suit, that recovery under the ICFA may be had for *unfair* as well as *deceptive* conduct, but the two categories have different pleading standards. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Because neither fraud nor mistake is an element of *unfair conduct* under the ICFA, a cause of action for unfair practices needs to only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b). *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669-70 (7th Cir. 2008). A cause of action for *deceptive acts or practices* under the ICFA, however, must meet the particularity requirement in Rule 9(b).

Kroger contends that Womick has failed to allege facts that sustain a claim for unfair and deceptive business practices under the ICFA as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. 12, p. 5). Kroger reasons that Womick's claim of unfairness is predicated on fraud because "Plaintiff's claim against Kroger for unfair

business practices is one and the same as Plaintiff's claim against Kroger for fraud/deceptive business practices." (*Id*. at p. 6).

    A.  *Count I – Violation of the ICFA By Means of Unfair Business Practices*

Again, Womick's *unfair practices claims* need only pass basic Rule 8(a) pleading standards. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("When a claim alleges an unfair practice, the relaxed pleading standards of Rule 8 do indeed govern") (citing *Windy City*, 536 F.3d at 670). However, Kroger cites to *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014), and contends that "when the claim of unfairness is predicated on fraud, as in this case, Plaintiff must plead his or her claim with sufficient particularity to satisfy the heighted pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure." (Doc. 12, p. 5). Kroger would be correct if Womick "[s]imply add[ed] language of 'unfairness' instead of 'misrepresentation . . . '" *Camasta*, 761 F.3d at 737. But Womick didn't.

"To determine whether a practice is unfair, Illinois courts consider three factors: whether it 'offends public policy;' is 'immoral, unethical, oppressive, or unscrupulous;' or 'causes substantial injury to consumers.'" *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738–39 (7th Cir. 2019) (quoting *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014)). Womick does not need to satisfy all three factors; "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (citation omitted).

Kroger contends Womick fails to allege any conduct by Kroger that is immoral,

unethical, oppressive, or unscrupulous. (Doc. 12, p. 7). Kroger then states: "[i]n considering this factor, courts evaluate whether the conduct is 'so oppressive that it leaves the consumer with little alternative except to submit to it.'" (Doc. 12, p. 7) (quoting *Toney v. Kinsch*, 2012 WL 567729, at *6 (N.D. Ill. Feb. 21, 2012)).

Kroger's conduct need not be so oppressive. Indeed, the Seventh Circuit in *Benson*, 944 F.3d 639, did not require the defendant's conduct to be so oppressive. In *Benson*, the plaintiff alleged that the defendant "engaged in unfair acts or practices by including needless slack-fill in its chocolate boxes, and that this amounted to a misrepresentation of the quantity of chocolate within." *Id*. at 647. "This practice, [plaintiff] contend[ed], constitutes false advertising, which is unethical and offends public policy." *Id*. The plaintiff also "assert[ed] that the unfair practice seriously injures consumers by making them believe that they are receiving more chocolate than the actual amount within each box." *Id*. Based on these allegations, the Seventh Circuit held that the plaintiff's "allegations of unfair practices [met] the federal notice-pleading standards because they claim that [defendant] 'engaged in unfair conduct and aver[ ] facts that, if proven, make relief more than merely speculative.'" *Id*.

Like the plaintiff in *Benson*, who alleged that defendant's unfair practice seriously injured consumers by making them believe they are receiving more chocolate than the actual amount within each box, Womick is alleging that Kroger's unfair practice makes consumers believe they are receiving the means to produce more coffee than the actual amount within each can. (Doc. 1-1). To be sure, Womick alleges he paid for products representing that they could make 225 or 235 cups of coffee, and it was impossible for

Womick to make 225 or 235 cups following Defendant's own instructions on the can. (Doc. 1-1, p. 18). Kroger's misrepresentations caused Womick to believe that he for paid for Kroger-brand coffee that could make 225 or 235 cups, and not the smaller quantity of servings that he actually got. Womick continues alleging he paid more than the actual value of the coffee because he received Kroger-brand coffee that made far fewer than 225 or 235 cups. (*Id*.). As a result, Womick alleges he suffered an ascertainable loss of money and/or property in that they overpaid for the Kroger's coffee because he paid a price that was based on Kroger's material misrepresentations and concealments regarding the number of cups that can be made from the Class Products. (*Id*.).

Taking these allegations as true, Womick's claims in Count I regarding unfair practices meet the federal pleading standards, similar to *Benson*, because they claim Kroger engaged in unfair conduct and averred facts that, if proven, "make relief more than merely speculative." *See Benson*, 944 F.3d at 647; *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738–40 (7th Cir. 2019).

B. *Count II – Violation of the ICFA By Means of Deceptive Acts or Practices*

Because the deceptive allegations involve fraudulent behavior, the claims must meet Rule 9(b)'s particularity requirements. Under Rule 9(b), Womick must plead "who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Besides Rule 9(b), the act or practice must be deceptive. "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (citations omitted). "Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Stemm v. Tootsie Roll*

*Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled.'" *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 921 (N.D. Ill. 2017) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).

Here, the complaint alleges the labels are deceptive because a reasonable consumer, like Womick, expects that if the product's own brewing instructions are followed, the canisters will make roughly the number of cups of coffee prominently displayed on the packaging. As alleged in the tables above, however, Womick claims that is not the case. *See In re Folgers Coffee*, 2021 WL 7004991, at *8 (W.D. Mo. Dec. 28, 2021) (acknowledging that "[m]ultiple courts discussing similar language have concluded that if a seller represents that a good produces 'up to' a certain quantity of something, and there is a significant disparity between that quantity and the amount a consumer can actually produce, 'a fact question is presented as to whether a reasonable consumer' would be deceived"). Womick satisfies both the reasonable consumer standard and Rule 9(b) here by alleging the "who": Kroger; the "what": the number of cups the canisters represent they can make, which he alleges cannot be made following Defendant's directions; the "when": his purchases in 2020–2021 from Kroger in Carbondale, Illinois, prior to which he read the label; the "where": on the label of the canisters; and the "how": by representing that the products can make a certain number of cups that they are incapable of making, which caused Womick to overpay. *See Vanzant v. Hill's Pet Nutrition,*

*Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (holding that the complaint's allegations detail the "who," "what," and "how" of the fraud claim with particularity by alleging that "the prescription requirement, prescription label, and associated marketing materials for [defendant's product] were deceptive; that [plaintiffs] saw the specific 'prescription' language and symbols when they made their purchases; that the prescription pet food was something less than they expected; and that they suffered damages because they paid a higher price").

### C. *Actual Damages Under ICFA*

Kroger argues that Womick fails to identify any pecuniary loss because the Complaint "merely theorizes that it is 'impossible' . . . to brew less than the stated number of cups of coffee." (Doc. 12, p. 12). Kroger notes that Womick's "assertion is based solely on the mathematical formula and assumption that every single 'rounded' tablespoon weighs exactly 5 grams; it is not based on [Womick's] actual experience with brewing Kroger-brand coffee." (*Id*.). Additionally, Kroger asserts that Womick also has failed to sufficiently allege that the coffee he purchased was actually worth less than the amount he paid. (*Id*. at p. 13).[1]

The actual damage element of a private ICFA action requires that the plaintiff

---

[1] Kroger also notes that Womick did not purchase the following varieties: Breakfast Blend Mild Roast, 100% Columbian Medium Dark Roast, Reduced Caffeine Lite Medium Roast, and Special Roast Medium Roast. (Doc. 12, p. 14). Kroger notes that Womick did not purchase the following sizes: 11.5 oz., 24 oz., and 25 oz. (*Id*.). Kroger then argues that "[b]ecause Plaintiff did not actually purchase each of these Kroger-brand coffee products, Plaintiff has not suffered any 'actual pecuniary loss' relative to each of the components of the 'Class Products' and cannot adequately allege the damages required to sustain a claim under the ICFA." (*Id*.). The Court disagrees. *See Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 699 (N.D. Ill. 2020) (noting that "a growing majority of courts apply a different standard: a class representative who purchased product X has standing to represent a class member who purchased product Y if the injuries are 'substantially similar'").

suffer "actual pecuniary loss." *Carrol v. S.C. Johnsons & Son, Inc.*, 17-CV-05828, 2018 WL 1695421, at *6 (N.D. Ill. Mar. 29, 2018). Actual loss may occur if the seller's deception deprives the plaintiff of "the benefit of [their] bargain" by causing them to pay "more than the actual value of the property." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010).

In *Benson*, the plaintiffs failed to show pecuniary loss because they never said that the chocolates they received were worth less than the price they paid, or that they could have obtained a better price elsewhere, and their request for damages based on the percentage of nonfunctional slack-fill was "quite vague." 944 F.3d at 647–48; *see also Kim*, 598 F.3d at 366. Conversely, in *Biffar*, the plaintiff alleged that as a result of the defendant's deceptive "Nothing Artificial" label, she paid a premium for the muffin mix assuming it contained no artificial ingredients. 2016 WL 7429130, at *4. The defendant argued that the plaintiff's ICFA claim failed because she did not plead any facts suggesting that the muffin mix was not worth the $3.49 she allegedly paid. *Id.* But the court found that the plaintiff pled a plausible theory of damages because the plaintiff alleged that "the price of the muffin mix as represented was too much, or more than the value of the muffin mix as sold and that she would not have purchased it or would have paid less for it had she known it contained synthetic ingredients." *Id*.

Here, Womick's allegations are not like the vague allegations in *Benson*. Paragraphs 13, 20, 22, 31, 57, 58 and 60 and the charts in the Complaint specifically allege Womick failed to receive the quantity of product Defendant represented and that Womick paid for. (Doc. 1-1). Womick alleged that he "overpaid of the Class Products because [he] paid a price that was based on [Kroger's] material misrepresentations and

concealments regarding the number of cups that can be made from the Class Products, in an amount to be proved at trial." (Doc. 1-1, pp. 18-19); *see In re Folgers Coffee*, 2021 WL 7004991, at *12 (denying defendants' motion to dismiss because plaintiff alleged that she paid "'more than the actual value of' the cannisters she purchased due to Defendants' misrepresentations, and would not have purchased them had she known of the misrepresentations"). Womick even points out other brands that do not contain representations identifying the number of cups that can be made from their canisters and other brands that display the number of cups that can be made from the contents without overstating the number. (Doc. 1-1, pp. 11–13).

## II.    Count III—Unjust Enrichment

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

Under Illinois law, there is no stand-alone claim for unjust enrichment. *Pirelli*, 631 F.3d at 447. Instead, Illinois courts describe it as a condition that may be brought about

by unlawful or improper conduct as defined by law, "such as fraud, duress or undue influence." *Benson*, 944 F.3d at 648 (quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 484 N.E.2d 349, 354 (Ill. App. Ct. 1985)). "The request for relief based on unjust enrichment is therefore 'tied to the fate of the [ICFA] claim[.]'" *Id.* (quoting *Vanzant*, 934 F.3d at 740).

Womick incorporates and adopts the allegations set forth in Counts I and II for the unjust enrichment claim. Womick alleges he conferred a monetary benefit on Kroger when he paid for the Class Products, which Kroger retained despite knowingly misrepresenting and concealing material facts in connection with their manufacturing, labeling, marketing, advertising, distribution, and sales of the Class Products. (Doc. 1-1, pp 21-22). Thus, according to Womick, Kroger was unjustly enriched at the expense of Womick when he overpaid for the Class Products, and Kroger should not be permitted to retain the money gained through deception and fraud. (*Id.*).

Kroger asserts that Womick's claim for unjust enrichment fails "as a matter of law" because Womick's claims for deceptive and unfair business practices under the ICFA fail. (Doc. 12, p. 15). The problem is the Court has not found that Womick's claims fail, and thus, Kroger's motion is denied as to Count III. *See e.g., Laff v. Best Buy Stores, L.P.*, 2010 WL 2220581 (N.D. Ill. June 3, 2010) ("The Court finds that plaintiff has sufficiently alleged the elements of his ICFA claim, as well as that [defendant] received an unjust benefit from its denial of plaintiff's price match request on the Samsung television."); *Clay Fin. LLC v. Mandell*, 2017 WL 3581142, at *8 (N.D. Ill. Aug. 18, 2017) ("Plaintiffs sufficiently alleged that Field obtained Plaintiffs' funds from Mandell Companies through wrongful conduct

and therefore the Motion to Dismiss the unjust enrichment claim is denied."); *Grabowski v. Dunkin' Brands, Inc.*, 2017 WL 6059966, at *4 (N.D. Ill. Dec. 7, 2017) ("[Defendant] argues that the fraud and unjust enrichment claims fail for the same reasons as the ICFA claim. Since the ICFA claim remains, the fraud and unjust enrichment claims remain as well.").

Defendant further asserts that Womick's claim for unjust enrichment likewise fails because a formal, legal contract existed between the parties, thereby precluding Womick's claim. This argument falls flat as the unjust enrichment claim may be tied to an ICFA claim. *See id.*

## III.   Standing to Pursue Injunctive Relief

Womick requests injunctive relief enjoining Kroger from continuing the unlawful practices set forth above and ordering Kroger to engage in a corrective advertising campaign. Kroger argues that Womick lacks standing to pursue injunctive relief because he has failed to allege a threat of future injury. (Doc. 12, pp. 16–17). Kroger notes that Womick failed to allege he intends to buy Kroger-brand coffee products in the future, and Kroger considers Womick's future claim of harm "theoretical and speculative at best." (Doc. 12, p. 17). Further, because Womick is now aware of Kroger's sale practices, he is unlikely to be harmed by the practices in the future. (*Id.*).

Article III of the Constitution limits the judicial power of federal courts to adjudicating "cases" and "controversies." *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 597 (2007). "One of the controlling elements in the definition of a case or controversy under Article III is standing." *Id.* (internal quotations, citations, and alterations omitted). "[T]he irreducible constitutional minimum of standing consists of

three elements." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) is redressable by the Court. *Id.*

There is a "split of authority on the question of whether consumer plaintiffs claiming [only that] they were deceived can pursue injunctive relief when they are aware of the deceptive practice at issue." *See In re Herbal Supplements Mktg. and Sales Practices Litig.*, 2017 WL 2215025, at *7 (N.D. Ill. 2017) (collecting cases). Here, the split favors Kroger. Womick cites *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 215 F. Supp. 3d 670, 673 (N.D. Ill. 2016), for the notion that "[t]he injunctive provisions of consumer protection statutes such as ICFA could never be invoked to enjoin deceptive practices if the complaining consumer's standing dissipated the moment she discovered the alleged deception and could no longer be fooled." But the court in *Leiner* relied on cases from the Eastern District of New York, Central District of California, and Northern District of California—not Illinois.

Womick contends that "[t]he Seventh Circuit's analysis in *Camasta* suggests it agrees with this 'better view.'" (Doc. 21, p. 26). But district courts within the Seventh Circuit disagree. In *In re Herbal*, 2017 WL 2215025, at *8, the court noted:

> Moreover, beyond the persuasive force of *Bohn* and similar cases, the Seventh Circuit appears to endorse Defendants' argument. In *Camasta v. Jos. A Bank Clothiers*, the plaintiff brought a consumer fraud action based on the defendant's allegedly fraudulent sales technique. 761 F.3d 732, 734–35 (7th Cir. 2014). He claimed that had he known the truth, he would not have purchased the defendant's products. *Id.* at 735. The court explained that the plaintiff's claim did not entitle him to injunctive relief because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* at 740–41 (alteration in original)

(quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). *Camasta* uses the language of Article III standing (i.e., "case or controversy"), cites *O'Shea* (an Article III standing case), and "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits," *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998)). Thus, *Camasta* dealt with Article III standing. Even if *Camasta* were dicta, as the court found in *Le v. Kohls Department Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016), it is persuasive.

Additionally, *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017), the court acknowledged:

> The Seventh Circuit seems likely to agree, based on its reasoning in a similar context that a plaintiff who was already aware of the defendant's deceptive sales practices could not obtain injunctive relief because he "is not likely to be harmed in the future." *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (" '[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.' ") (quoting *O'Shea*, 414 U.S. at 495, 94 S.Ct. 669). Although plaintiff cites a decision that has dismissed this portion of *Camasta* as *dicta*, *see Le v. Kohls Dep't Stores, Inc.*, 160 F.Supp.3d 1096, 1111 (E.D. Wis. 2016), the Court finds the Seventh Circuit's reasoning compelling, regardless of whether it is *dicta*. *See in re Herbal Supplements*, 2017 WL 2215025, at *8 ("Even if *Camasta* were *dicta*, as the court found in [*Le*], it is persuasive.").

In *Geske*, 503 F. Supp. 3d at 702, the court continued this trend finding that:

> Although the Seventh Circuit hasn't directly addressed standing for injunctive relief in this context, it has offered instructive dicta. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). There, the Court of Appeals stated that, once a plaintiff is aware of a defendant's "sale practices, he is not likely to be harmed by the practices in the future." *Id.* at 741. Courts in this district have picked up that line of reasoning and concluded that allegations of deceptive practices, without more, do not support standing for injunctive relief.

Based on persuasive authority, Womick, who is already aware of the Kroger's allegedly deceptive sales practices, lacks standing to obtain injunctive relief.

## Conclusion

For these reasons, the Motion to Dismiss filed by The Kroger Co. (Doc. 12) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to injunctive relief. The motion is **DENIED** as to Kroger's remaining arguments. The action will proceed on Womick's claims under ICFA and unjust enrichment.

**IT IS SO ORDERED.**

DATED:  March 7, 2022

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**