IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY WOMICK, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER CO.,<br><br>Defendant. | Case No. 21-CV-00574-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Strike Plaintiff Anthony Womick's Class Allegations filed by Defendant The Kroger Co. ("Kroger") (Doc. 29). For the reasons set forth below, the Motion to Strike is denied.

### BACKGROUND

Womick alleges that Kroger manufactures, packages, advertises, distributes, and sells various types of ground coffee under its own private label brand in canisters. (Doc. 1-1, p. 5). Kroger represents the number of cups that can be made depends on the size of the canisters:

- The 11.5-ounce (326 g.) canisters represent they can make about 90 cups.
- The 24-ounce (680 g.) canister represent they can make about 185 cups.
- The 25-ounce (708 g.) canisters represent they can make about 195 cups.
- The 29-ounce (822 g.) canisters represent they can make about 225 cups.
- The 30.5-ounce (864 g.) canisters represent they can make about 235 cups.

Page 1 of 12

(*Id*. at pp. 6–8). Brewing instructions on the back of Kroger's canisters provide two methods: (1) to make one cup, the directions state the consumer is to use one rounded tablespoon of coffee for each six fluid ounces of cold water; and (2) to make ten cups, the consumer is to use a half cup of coffee. (*Id*. at p. 8).

Womick asserts these representations are false even when following Kroger's brewing instructions. (*Id*. at pp. 8–9). Following Kroger's instruction to use one rounded tablespoon, the 30.5-ounce canisters "will produce no more than, and probably less than," approximately 173 cups of coffee, not 235 cups as the canister indicated. (*Id.*). Womick provided the below table showing the maximum number of cups Kroger represents can be made using the one-cup method, compared to the actual maximum number that the canister will make using a 5-gram, not rounded, tablespoon, along with the difference (number of cups the consumer paid for but did not receive):

| Class Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 11.5 oz. | 90 cups | 65 cups | 25 cups |
| 24 oz. | 185 cups | 136 cups | 49 cups |
| 25 oz. | 195 cups | 141 cups | 54 cups |
| 29 oz. | 225 cups | 164 cups | 61 cups |
| 30.5 oz. | 235 cups | 173 cups | 62 cups |

(*Id*. at p. 10).

Under the alternative instructions for making ten cups of coffee, Womick claims the Class Products also fail to make the number of cups represented on the canister. Assuming one tablespoon of ground coffee weighs five grams, there are eight tablespoons in a half cup, meaning a half cup of ground coffee weighs forty grams. (*Id*. at

p. 10). Womick provided another table to demonstrate that Kroger's ten cup instruction produces less than the amount represented on the canister:

| Class Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 11.5 oz. | 90 cups | 81.5 cups | 8.5 cups |
| 24 oz. | 185 cups | 170 cups | 15 cups |
| 25 oz. | 195 cups | 177 cups | 18 cups |
| 29 oz. | 225 cups | 205.5 cups | 19.5 cups |
| 30.5 oz. | 235 cups | 216 cups | 19 cups |

(*Id.*).

Womick alleges that he regularly purchased Kroger's 29 oz. and 30.5 oz. products from 2020–2021. (*Id.* at p. 13). Prior to making these purchases, Womick read the representation on the label regarding the number of cups that could be made from Kroger's products, and at all times, Womick believed and had a reasonable expectation that the labeling on the products was truthful and accurate. (*Id.*). Womick proclaims he typically followed Kroger's 10-serving instructions when making coffee. (*Id.*). Finally, Womick claims that, as a direct result of Kroger's misrepresentations of the number of cups that can be made from its products, he has been deprived of the benefit of their bargain in purchasing these products because the products had less value than represented. (*Id.* at pp. 13–14).

Womick brings a class action with three claims against Kroger: (1) Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA") By Means of Unfair Business Practices; (2) Violation of the ICFA By Means of Deceptive Acts or Practices; and (3) Unjust Enrichment. (Doc. 1-1). Kroger moved to dismiss pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 12). The motion

to dismiss was granted as to injunctive relief, but denied as to Kroger's remaining arguments. (Doc. 27).

Kroger answered Womick's complaint—but on the same day—moved to strike the class allegations in Womick's complaint pursuant to Rules 12(f), 23(c)(1)(a), and 23(d)(1)(D) of the Federal Rules of Civil Procedure.

## ANALYSIS

It is well-established that a disputed issue of law should not be decided on a Rule 12(f) motion. *First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, 214 F. Supp. 3d 723, 726 (S.D. Ill. 2016). Further, "[m]otions to strike class allegations are generally disfavored." *Harris v. Rust-Oleum Corp.*, 2022 WL 952743, at *3 (N.D. Ill. Mar. 30, 2022) (citing *Murdock-Alexander v. Tempsnow Emp.*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016)).

Still, courts must determine whether to certify actions as class actions "[a]t an early practicable time after a person sues or is sued as a class representative." FED R. CIV. P. 23(c)(1)(A). District courts within the Seventh Circuit have held that motions to strike class allegations are appropriate when determining whether cases will proceed as a class action. *Harris*, 2022 WL 952743, at *3 (collecting cases). "Most often, motions to strike are granted when the defendant shows that the underlying class claims either require individualized inquiries, there are substantive variations in the governing law, or both." *Id.* (citing *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *5 (N.D. Ill. Aug. 1, 2019); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 832 (N.D. Ill. 2013)).

District courts within the Seventh Circuit "evaluate motions to strike class

allegations under Rule 23, not Rule 12(f)." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (collecting cases). At first, "[c]ourts disagree[d] as to which party shoulders the burden of persuasion when the propriety of class certification is raised by means of a motion to strike class allegations." *Huddleston v. Am. Airlines, Inc.*, 2018 WL 4742097, at *2 (N.D. Ill. Oct. 2, 2018); *Compare Wright v. Fam. Dollar, Inc.*, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010) (noting "[e]ven when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action"), *with Rysewyk v. Sears Holdings Corp.*, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015) ("Unlike with a motion for class certification, defendants, as the movants, bear the burden of persuasion on their motion to strike"). But recently courts agree "where the plaintiffs have not yet had the benefit of class discovery, the defendant 'bears the burden of proving that the proposed class is not certifiable.'" *Kurt v. Platinum Supplemental Ins., Inc.*, 2021 WL 3109667, at *13 (N.D. Ill. July 22, 2021) (quoting *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020)); *see also Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555, 568 (N.D. Ill. 2021).

   A. *Kroger Answered Plaintiff's Complaint Before Filing the Motion to Strike*

Under Rule 12, the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). To do so, the Court may act on its own or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." *Id*.

Womick argues that Kroger's motion to strike is time-barred. The Court disagrees.

"Rule 12(f)(1) does not impose any time constraint on courts like it does on parties in Rule 12(f)(2), so courts read that omission to mean they may consider a motion to strike at any point in a case." *Red Label Music Publ'g, Inc. v. Chila Prods.*, 388 F. Supp. 3d 975, 981 (N.D. Ill. 2019); *see also Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1399–400 (7th Cir. 1991) ("Courts have read Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by an untimely filed motion . . . The district court elected to reach the merits of [plaintiff's] motion to strike despite its untimely filing. We, too, address the merits.").

   B. *Commonality Requirements of Rule 23(a)(2)*

Kroger argues that Womick's purported "common questions" do not meet the commonality requirement because Womick seeks to "certify one class that consists of all individuals in Illinois 'who purchased one or more of the Class Product in Illinois during the Class Period.'" (Doc. 29, p. 6). Kroger continues, "[Womick's] claims will require proof as to forty-five different products (nine coffee types x five sizes) to determine whether each labeling was unfair or deceptive." (*Id.* at p. 7). Kroger reasons "whether one size coffee canister's advertised approximate yield is deceptive does not affect whether another size coffee canister's advertised approximate yield is deceptive." (*Id.*).

In *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013), the Court's analysis did not focus on the possibility that the plaintiff's claims would require proof as to the different washing machines sold in overlapping periods beginning in 2001 and 2004. *See id.* at 801 (acknowledging that "in the context of Rule 23(a)(2), the rule that provides

that class actions are permissible only when there are issues common to the members of the class (as of course there are in this case)"). Instead, the Court noted "[t]here is a single, central, common issue of liability: whether the Sears washing machine was defective." *Id*. Similarly, one of the common issues of liability will likely include "whether following the common brewing instructions on the Class Products can produce the number of cups of coffee that Kroger represents on the front of the canister." (Doc. 30, p. 19).

C. *Predominance Requirement of Rule 23(b)(3)*

Next, Kroger insists that "[Womick] fails to satisfy Rule 23(b)(3)'s requirement that common questions 'predominate' over individual ones." (Doc. 29, p. 8). Kroger asserts that "[t]he determination of whether the labels are deceptive to a reasonable consumer will necessarily require the Court to make individual determinations concerning the 'totality of the information made available' to each putative class member and that individual's understanding of the coffee canister labels." (*Id*. at p. 9).

Kroger is not only jumping the gun,[1] but also *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008)—the case Kroger relies on—is inapplicable. In *Thorogood*, the plaintiff alleged the words "stainless steel" imprinted on the dryer were deceptive, "unless the drum is made entirely of stainless steel, since if it is not it may rust and cause rust stains on the clothes in the dryer." *Id*. at 744. The Seventh Circuit noted:

---

[1] Indeed, "[a]fter clearing the hurdles posed by Rule 23(a), a person wishing to bring a class action must also demonstrate that the action fits under one of the three subsections of Rule 23(b)." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018). "In evaluating these factors, the court must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification." *Id*. at 1025.

> *Stainless steel clothes dryers are not advertised as preventing rust stains on clothes.* The only reference to rust in Sears's marketing that the plaintiff refers to or that we have found is "Stainless Steel Drum resists rust and won't chip, peel or snag clothes." The only thing potentially deceptive about this claim is that a ceramic coating on non-stainless steel is unlikely to rust, chip, peel, or snag clothes either. But that is not Mr. Thorogood's complaint. *His concerns are idiosyncratic.* A further indication of this is that to rally fellow victims of the stainless steel Kenmores he posted his bad experience on a web site ("Fight Back.com," http://fightback.com) that advertises itself as a "conduit for consumer problem solving and redress." No one responded, as the "feed back" file on the web site invites persons who agree with a posted complaint to do.
>
> The evaluation of the class members' claims will require individual hearings. Each class member who wants to pursue relief against Sears will have to testify to what he understands to be the meaning of a label or advertisement that identifies a clothes dryer as containing a stainless steel drum.

*Id.* at 747 (emphasis added). The Court then instructed the district court to decertify the class because of "the absence of any reason to believe that there is a single understanding of the significance of labeling or advertising clothes dryers as containing a 'stainless steel drum.'" *Id.* at 748.

Kroger asserts "[t]he same is true in this case." (Doc. 29, p. 10). But unlike the plaintiff in *Thorogood*, where there was no single understanding of the significance of labeling or advertising stainless steel drums, here the single understanding of the significance in Kroger's labeling is "that if the product's own brewing instructions are followed, the canisters will make roughly the number of cups of coffee prominently displayed on the packaging." *Womick v. Kroger Co.*, 2022 WL 673095, at *4 (S.D. Ill. Mar. 7, 2022).

D. *Adequacy Requirements of Rule 23(a)(4)*

Kroger's arguments regarding Womick's adequacy illustrate why its motion to strike is premature. Specifically, Kroger asserts Womick is "not an adequate class representative because he cannot show that his lawsuit will provide consumers anything beyond what is already theirs for the asking." (Doc. 29, p. 14). According to Kroger, its "ground coffee retails for far less than toy products in *Aqua Dots* ($17 to $30) and the flu remedy in *Conrad* ($12 to $20)." (Doc. 29, p. 13). Kroger then concludes:

> Since Plaintiff may seek only an average refund of 18%, his recover[y] is limited to approximately $1.26 per canister purchased. Given the high litigation costs that will be involved in this matter (consumer surveys, expert witnesses, class notice, and attorneys' fees), it is inevitable that the costs of litigation will "swallow all of any potential recovery." *Conrad*, 869 F.3d at 540.

(*Id*. at pp. 13-14).

Indeed, a review of *Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017), *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), and *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), reveals why Kroger's adequacy arguments jump the gun. In *Conrad*, 869 F.3d at 540, the record before the Court showed that the plaintiffs were protected not only by a prior class action settlement covering the product, but also by the defendant's refund process. The plaintiffs in *Conrad* attempted to differentiate the defendant's refund process to the recall in *Aqua Dots*. The Court concluded, however, that the defendant's refund process "is comparable to the process we accepted in *Aqua Dots*." *Id*. The Court found that "there was enough information in the record to permit the district court to spot the similarities with *Aqua Dots* and to conclude that [the] case [was] not suitable for class

treatment." *Id.* at 541. The Court noted:

> It is hard to see how more discovery would change things. In one incarnation or another, this case has dragged on since 2013; it is a *de facto* continuation of the preceding 2011 suit, which was itself an outgrowth of the underlying California class action. The evidence is out there for all to see, and [plaintiff] has given us no reason to think that there are any smoking guns left to uncover. His own actions reinforce this conclusion: he took no steps to pursue discovery between his 2013 motion for class certification and his last-ditch effort to avoid dismissal in 2016. We conclude, therefore, that the district court was well within its rights to refuse to certify [plaintiff's] proposed class.

*Id.*

Unlike the amount of evidence regarding the defendant's refund process in *Conrad*, there is little information in the record on Kroger's refund process. Kroger apparently has an "offer to provide customers a refund if they are not satisfied with their purchase [and] [it] is clearly displayed on each Kroger-brand coffee canister." (Doc. 29, p. 11). This may be true, but there is neither information in the record to determine whether Womick is seeking the exact same refund amount that Kroger proposedly offers, nor evidence that Kroger has implemented a widescale refund program. *Cf. In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d at 751 ("[T]he recall was widely publicized. Why bear these costs a second time? The Consumer Products Safety Commission has not expressed dissatisfaction with the recall campaign or its results, and the record does not contain any evidence of injury to children after the recall was announced. Spin Master believes that most of the 400,000 kits not returned in the recall were used before the recall began and that few, if any, defective kits remain in consumers' hands.").

The other case discussed within *Conrad*, 869 F.3d 536—*Eubank*, 753 F.3d 718—was

about a class action settlement agreement.² As far as the Court can tell, there is no class action settlement agreement between Kroger and Womick. Without a class action settlement agreement, the Court cannot evaluate whether the potential class action would be a racket because it yields zero benefits for the proposed class. *See e.g., In re Walgreen Co. S'holder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016) (noting that "the class action that yields fees for class counsel and nothing for the class—is no better than a racket. It must end. No class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand."); *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 556 (7th Cir. 2017) (acknowledging that "[a] class settlement that results in fees for class counsel but yields no meaningful relief for the class 'is no better than a racket'") (quoting *In re Walgreen Co. S'holder Litig.*, 832 F.3d at 724).

Besides Kroger's premature adequacy arguments, Kroger cannot moot Womick's claims by offering an unaccepted refund. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016) ("In sum, an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case.").

E. *The Complaint's Class Definition*

Kroger's final argument is that Womick's class definition is overbroad because "it includes individuals who did not rely on the allegedly deceptive labels when purchasing the Kroger-brand coffee canisters." (Doc. 29, p. 14).

---

² The district court had already certified two separate classes, and the Seventh Circuit "upheld the certifications over [defendant's] objections in *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir.2010) (per curiam)." *Eubank*, 753 F.3d at 721.

At this stage, the Court cannot conclude that Kroger's proposed class is overbroad or unascertainable. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014) (a class definition that included online purchasers "might be overbroad if such purchasers could not have been deceived by the product packaging found in stores[,]" but based on "the record amassed for the class certification decision, it is apparent that this is not a case where few, if any, of the putative class members share the named representative's grievance against the defendant"). As discovery progresses, the class definition may need refinement—but striking the allegation at this stage would be improper because it provides Kroger with notice of the class Womick will seek to certify. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (noting that "the obligation to define the class falls on the judge's shoulders under FED. R. CIV. P. 23(c)(1)(B)," and "[t]he judge may ask for the parties' help").

## CONCLUSION

For these reasons, the Motion to Strike filed by The Kroger Co. (Doc. 29) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  April 28, 2022

*(signature)*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**