## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTHONY WOMICK, on behalf of himself and all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No.: 3:21-cv-00574-NJR |
| v. | ) ) | |
| THE KROGER CO., | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## **PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.      NATURE OF THE ACTION ............................................................................................... 1

II.     THE PARTIES................................................................................................................... 2

III.    JURISDICTION AND VENUE ........................................................................................ 2

IV.     FACTUAL ALLEGATIONS ............................................................................................ 3

V.      CLASS ALLEGATIONS ................................................................................................ 13

        COUNT I ......................................................................................................................... 16

        COUNT II ........................................................................................................................ 19

        COUNT III....................................................................................................................... 21

        COUNT IV....................................................................................................................... 22

VI.     PRAYER FOR RELIEF ................................................................................................. 24

VII.    JURY DEMAND ............................................................................................................ 26

Plaintiff Anthony Womick ("Plaintiff"), on behalf of himself and all others similarly situated, files this First Amended Class Action Complaint against Defendant The Kroger Company ("Kroger") based on personal knowledge as to his own actions and on information and belief based on the investigation of counsel as to Kroger's conduct and practices.

## I.   NATURE OF THE ACTION

1.      This case is based on a claim of misrepresentation and deception by Kroger in selling Kroger-brand ground coffee in canisters that grossly overstate the number of cups of coffee that can be made from their contents.

2.      These canisters each contain a representation that the contents are sufficient to make a certain number of cups.  However, using the directions for making coffee on the canister, the contents are insufficient to make that number of cups.

3.      For example, some of the canisters of Kroger-brand ground coffee state that they will make 235 cups.  These canisters contain directions to make coffee by using one rounded tablespoon of ground coffee for each six fluid ounce cup of coffee.  However, using that method, the canisters' contents will make no more than 173 cups.  As set forth below, following the canisters' alternative direction to make 10 cups of coffee also leaves the consumer significantly short—in this example with only 216 cups.

4.      This is not a "slack-fill" case where the size of the container allegedly makes a consumer think he will receive more product than is actually in the box.  Rather, the class products in this case prominently feature a representation that the consumer will receive a certain quantity that is impossible to obtain when following the product's own preparation instructions.

5.      Plaintiff Anthony Womick has purchased Kroger-brand coffee in a cannister and has been deceived by Kroger's misrepresentations. Accordingly, he brings this action to recover

damages on behalf of himself and other similarly situated consumers in Illinois and in states with similar consumer protection laws under the facts of the case.

## II.  THE PARTIES

6.      Plaintiff Anthony Womick is a resident of Williamson County, Illinois.  During the Class Period, as defined below, he shopped at the Kroger store located at 501 N. Giant City Road in Carbondale, Illinois and bought Supreme Blend and Select Blend varieties of Kroger-brand ground coffee in canisters.

7.      Defendant The Kroger Co. is a corporation incorporated in Ohio with its principal place of business at 1014 Vine Street in Cincinnati, Ohio, 45202.  In Illinois, it owns and operates more than one-hundred supermarkets, in which it sells products under the Kroger brand, including ground coffee sold in canisters. Kroger operates approximately 2,750 stores across the United States.

## III. JURISDICTION AND VENUE

8.      This is a class action under Rule 23 of the Federal Rules of Civil Procedure.

9.      This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Because some Class Members and Defendant are citizens of different states, there is minimal diversity. The amount in controversy exceeds $5,000,000 exclusive of interest and costs. There are at least 100 Class Members.

10.      This Court has personal jurisdiction over Defendant because Defendant purposefully directs its activities at residents of Illinois and the litigation results from injuries that arise out of or relate to those activities.

11.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and/or 1441.

## IV. FACTUAL ALLEGATIONS

12.    Kroger manufactures, packages, advertises, distributes, and sells various types of ground coffee under its own private label brand.

13.    During the Class Period as defined below, Kroger manufactured, packaged, advertised, distributed, and sold its Kroger-brand ground coffee in canisters that show the number of cups that it represents can be made from the canister's contents ("Class Products").

14.    The Class Products are sold in various sizes—including 11.5 oz., 24 oz., 25 oz., 29 oz., 30.5 oz.—and various flavors—including Breakfast Blend Mild Roast, 100% Columbian Medium Dark Roast, Decaf Classic Medium Roast, French Roast, Premium Blend Medium Roast, Reduced Caffeine Lite Medium Roast, Select Brand Medium Roast, Special Roast Medium Roast, Supreme Blend Medium Roast.

15.     Kroger represents on the packaging of each of the Class Products that the

container includes enough ground coffee to make an approximate number of servings.  For

example, as shown in the picture below, taken from Kroger's website, Kroger prominently states

on the lower right-hand side of the front of its 30.5 oz. canister of Select Blend Medium Roast

ground coffee that the canister's contents "MAKES ABOUT 235 CUPS":[1]



---

[1] https://www.kroger.com/p/kroger-select-blend-medium-roast-ground-coffee/0001111002335 (accessed
4/7/2021).

16.    Below are representative images of other Class Products listed above showing

similar representations:[2]













---

[2]https://www.kroger.com/search?query=Kroger%20Ground%20Coffee&searchType=previous_searches&
fulfillment=all  (accessed 4/7/2021).

 

17.    As can be seen, the number of cups that Kroger represents can be made depends on the size of the canisters:

      a.   The 11.5 oz. (326 g) canisters represent they can make about 90 cups.

      b.   The 24 oz. (680 g) canisters represent they can make about 185 cups.

      c.   The 25 oz. (708 g) canisters represent they can make about 195 cups.

      d.   The 29 oz. (822 g) canisters represent they can make about 225 cups.

      e.   The 30.5 oz. (864 g) canisters represent they can make about 235 cups.

18.    Those representations are false.

19.    Brewing instructions on the back of the canisters direct consumers to use two methods.  To make one cup, the directions state the consumer is to use one rounded tablespoon of coffee for each 6 fluid ounces of cold water, and to make 10 cups, the consumer is to use a half cup of coffee, as shown below:



20.     Those instructions, however, will not produce the number of cups of coffee that Kroger represents can be made on the front of the canisters.

21.     One tablespoon of ground coffee weighs 5 grams.[3] However, Kroger recommends the use of a "rounded tablespoon," which is larger than a tablespoon. Thus, using Kroger's instruction to use 1 rounded tablespoon of ground coffee per 6 fluid ounce cup of cold water, the 30.5 oz./864 g. canisters will produce no more than, and probably less than, 172.8 (or approximately 173) cups of coffee, not 235 cups.

22.     The table below shows, for each of the above products, the maximum number of cups Kroger represents can be made using the one-cup method, compared to the actual maximum number that the canister will make using a tablespoon (5g), along with the difference, meaning the number of cups the consumer paid for but did not receive:

---

[3] https://www.backyardbeans.com/blog/2017/11/1/how-much-coffee-should-i-use#:~:text=If%20you%20don't%20have,you%20use%20to%20brew%20with ; https://www.javapresse.com/blogs/enjoying-coffee/measure-coffee-without-a-scale ; https://www.roastycoffee.com/measure-coffee/ (accessed 4/7/2021).

| Class Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 11.5 oz. | 90 cups | 65 cups | **25 cups** |
| 24 oz. | 185 cups | 136 cups | **49 cups** |
| 25 oz. | 195 cups | 141 cups | **54 cups** |
| 29 oz. | 225 cups | 164 cups | **61 cups** |
| 30.5 oz. | 235 cups | 173 cups | **62 cups** |

23.    Following the alternative instructions on the canister to make 10 cups of coffee also fails to make the number of cups represented on the canister.  As set forth above, one tablespoon of ground coffee weighs 5 grams.  There are 8 tablespoons in a half cup[4], meaning a half cup of ground coffee weighs 40 grams. Thus, following Kroger's 10 cup instruction to use a half cup of ground coffee, the canisters still produce less than the amount represented on the front of the canister.

24.    The table below shows, for each of the above products while following the 10-cup instruction, the number of cups Kroger represents can be made, compared to the actual number that the canister will make, along with the difference, meaning the number of cups the consumer paid for but didn't receive:

| Class Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 11.5 oz. | 90 cups | 81.5 cups | **8.5 cups** |
| 24 oz. | 185 cups | 170 cups | **15 cups** |
| 25 oz. | 195 cups | 177 cups | **18 cups** |
| 29 oz. | 225 cups | 205.5 cups | **19.5 cups** |
| 30.5 oz. | 235 cups | 216 cups | **19 cups** |

---

[4] https://www.thecalculatorsite.com/articles/cooking/cups-and-tablespoons.php (accessed 3/25/21).

25.     Kroger's representations regarding the number of cups its Class Products will make are deceptive because a reasonable consumer like Plaintiff expects that if the Class Products' brewing instructions are followed, the canisters will yield the number of cups of coffee prominently displayed on the packaging.  However, as demonstrated in the tables above, that is not the case.

26.     By placing the representation regarding the number of cups the canister will make in such a prominent position on the packaging of the Class Products, Kroger intended that consumers would rely on it in deciding to purchase the product.

27.     As set forth above, upon information and belief, the following flavors of Class Products represent that the canister "makes about" the specified number of cups described above:

- Medium Roast Select Blend
- Medium Roast Supreme Blend
- Medium Roast Premium Blend
- Medium Dark Roast French Roast
- Medium Roast Decaf Classic
- Mild Roast Breakfast Blend
- Medium Dark Roast 100% Colombian
- Medium roast 50% Less Caffeine Lite
- Medium Roast Donut Shop Blend
- Medium Roast Special Roast
- Premium Decaffeinated Blend
- 100% Colombian
- Breakfast Blend – Café Collection

28.     Upon information and belief, the following flavors of Class Products represent that the canister "makes up to" (rather than "makes about") the specified number of cups described above:

- Supreme Blend
- Medium Roast Donut Shop Blend

29.     Internally, Kroger refers to the representation about the number of cups on the Class Products as the "serving quantity."

30.    Kroger recognizes that ██████████████████████████████

████████████████████████████████████████████████████████████

██████████████. For instance, ██████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

31.    The deceptive nature of Kroger's misrepresentations as set forth herein is especially egregious when considered in the context of other coffees that Kroger sells because not all brands of coffee sold in canisters carried by Kroger contain a representation regarding the number of cups that can be made from the contents, much less a false representation.  For example, Kroger sells Chock full o' Nuts coffee in cans that do not contain such a representation:[5]



---

[5] https://www.kroger.com/p/chock-full-o-nuts-original-medium-roast-ground-coffee/0007103800044 (accessed 4/7/2021).

32.     Kroger also sells other brands' ground coffee, including Maxwell House, Café

Bustelo, and Yuban, in canisters that do not contain representations identifying the number of

cups that can be made from their contents:[6]

  

33.     Kroger also sells Dunkin' ground coffee in canisters that display the number of

cups that can be made from the contents without overstating that number.  For example, Dunkin

Original Blend in a 30 oz. canister represents that it will make only up to 100 six-fluid oz. cups

even though, by using the directions on the canister, one could actually make 113 cups:[7]

---

[6] https://www.kroger.com/search?query=ground%20coffe&searchType=default_search&fulfillment=all
(accessed 4/7/2021).
[7] https://www.kroger.com/p/dunkin-donuts-original-blend-medium-roast-ground-coffee/0088133401102
(accessed 4/7/2021)



34.    These examples of ground-coffee products that do not misrepresent the number of cups that can be made from their contents demonstrate that there is no legitimate commercial reason why Kroger misrepresents the number of cups that can be made from its coffee products.

35.    Defendant's acts described herein were done wantonly, willfully, maliciously, and/or deliberately with intent to defraud, in reckless disregard of the rights of Plaintiff and the Class.

36.    Plaintiff Anthony Womick purchased the Class Products during the Class Period, including in 2020 and 2021.

37.    During this time, Mr. Womick has purchased the 29 oz. Medium Roast Supreme Blend and 30.5 oz. Medium Roast Select Blend Class Products.

38.    Prior to making his purchases, Mr. Womick was exposed to and read the label for the Class Products, including the representation regarding the number of cups that could be made from the can.  At all times, Mr. Womick believed and had a reasonable expectation that the labeling on the Class Products was truthful and accurate.

39.    Mr. Womick typically followed the 10-serving instructions on the Class Products

when making coffee.

40.    As a direct result of Kroger's misrepresentations of the number of cups that can

be made from the Class Products as set forth above, Mr. Womick has been deprived of the

benefit of his bargain in purchasing these products because the products had less value than

represented.

41.    Consequently, Plaintiff has suffered injury and lost money and property in

purchasing the products listed above.

## V. CLASS ALLEGATIONS

42.    Plaintiff brings this action on behalf of himself and as a representative of all

others who are similarly situated. Plaintiff seeks to represent all members of the following

Classes, as well as any additional classes, subclasses, or issues classes as Plaintiff may propose

and/or this Court may designate at the time of class certification:

> All persons who purchased one or more of the Class Products during
> the Class Period in the state of Illinois.
>
> (The "Illinois Class")
>
> All persons who purchased one or more of the Class Products during
> the Class Period in any of the following states: Illinois, Alabama,
> Alaska, Arizona, California, Colorado, Florida, Kansas, Kentucky,
> Michigan, Missouri, Montana, Nebraska, Nevada, New Mexico,
> North Carolina, Ohio, Oregon, South Carolina, Tennessee, Utah,
> Virginia, or Washington.[8]
>
> (The "Consumer Fraud Multi-State Class").

---

[8] Plaintiff reserves the right to add or remove states from the Consumer Fraud Multi-State Class
at the time of class certification based on information obtained during discovery. Plaintiff asserts
that the states included in the Consumer Fraud Multi-State Class have similar consumer fraud
laws under the facts of this case. *See* Alabama (Al. Code § 8-19-1 et seq.); Alaska (AS §
45.50.470 et seq.); Arizona (Ariz. Rev. Stat. §44-1521 *et seq.*); California (Cal. Business &
Professions Code §§ 17200 et seq.; Cal. Civil Code § 1750 *et seq.*); Colorado (Colo. Rev. Stat. §
6-1-101, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Kansas (Kan. Stat. Ann. § 50-623 et

43.     Excluded from the Class are any employee of Defendant, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

44.     Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

45.     The Class Period is that period within the statute of limitations for this action and extending until a Class is certified herein.

46.     The Class is certifiable under Rule 23.

47.     **Numerosity**.  Rule 23(a)(1).  The members of each Class are so numerous that joinder of all members is impractical.  The approximate number of Class members can be ascertained from Defendant's records.

48.     **Commonality and Predominance.**  Rule 23(a)(2) and Rule 23(b)(3).  There are questions of law and fact common to the Classes, which predominate over any questions affecting individual members of the Classes.  These common questions of law and fact include, without limitation:

      a.    Whether the Kroger-brand coffee sold during the Class period contained representations regarding the number of cups that could be made from their contents;

      b.    Whether Defendant's representations regarding the number of cups that could be made were material;

---

seq.); Kentucky (Ky. Rev. Stat. § 367.110, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Missouri (Mo. Rev. Stat. § 407.010, et seq.); Montana (Mont. Code. § 30-14-101, et seq.); Nebraska (Neb. Rev. Stat. § 59 1601, et seq.); Nevada (Nev. Rev. Stat. § 598.0915, et seq,); New Mexico (N.M. Stat. § 57-12-1, et seq.); North Carolina (N.C. Gen. Stat. § 75-1.1, et seq.); Ohio (Ohio Rev. Code Ann. § 1345.01, et seq.); Oregon (Or. Rev. Stat. § 646.605, et seq.); South Carolina (S.C. Code Ann. § 39-5-10, et seq.); Tennessee (Tenn. Code Ann. § 47-18-101 et seq.); Utah (Utah Code Ann. § 13-11-1, et seq.); Virginia (VA Code § 59.1-196, et seq.); and Washington (Wash. Rev. Code § 19.86.010, et seq.).

    c.   Whether Defendant's representations regarding the number of cups that could be made constitutes the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact;

    d.   Whether Defendant's representations regarding the number of cups that could be made was likely to mislead a reasonable consumer;

    e.   Whether Defendant has been unjustly enriched by its retention of profits from the sale of the misleading Class Products that it advertised, marketed, and sold;

    f.   Whether Plaintiff and the members of the Classes are entitled to an award of compensatory damages, statutory damages, restitution, and/or disgorgement; and

    g.   Whether Plaintiff and the Classes are entitled to an award of punitive damages as permitted by the consumer protection statutes of the states at issue.

49.    **Typicality.** Rule 23(a)(3). The claims of Plaintiff are typical of the claims of the Classes in that all Class members, including Plaintiff, have the same claims arising out of Defendant's selling the Class Products with misleading and/or deceptive labels.

50.    **Adequacy.** Rule 23(a)(4). Plaintiff is a member of the Classes he seeks to represent, is committed to the vigorous prosecution of this action, and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

51.    **Superiority.** Rule 23(b)(3). A class action is superior to other methods for the fair and efficient adjudication of the controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. Even if Class members themselves could afford such individual litigation, the court system could not. Given the

complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court. Finally, Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

52.    **Class Action on Limited Issues.** Rule 23(c)(4). Because there are common issues among the Classes, it is appropriate for this action to be maintained as a class action with respect to particular issues if necessary.

**COUNT I**
**<u>Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act</u>**
**<u>By Means of Unfair Business Practices</u>**
**<u>[815 ILCS § 505/1 *et seq.*]</u>**
**<u>(On behalf of Plaintiff and the Illinois Class)</u>**

53.    Plaintiff and the Illinois Class hereby incorporate and adopt by reference each and every allegation set forth above.

54.    Each Class Product is "merchandise" pursuant to 815 ILCS § 505/1(b).

55.    The advertising, offering for sale, sale, and/or distribution of the Class Products constitutes "trade" or "commerce" pursuant to 815 ILCS § 505/1(f).

56.    Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2, prohibits unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such

16

material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

57.    Section 2 further prohibits unfair methods of competition and unfair or deceptive acts or practices, including "the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act[.]"

58.    Section 2 also provides: "In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

59.    As set forth above, Defendant engaged in, inter alia, the following practices in transactions with Plaintiff and the Illinois Class which were intended to result in, and did result in, the sale of the Class Products:

      a.    Falsely stating, misrepresenting, concealing, omitting, and/or suppressing material facts regarding the number of cups that a can of the Class Products can make;

      b.    Representing that the Class Products have characteristics, benefits, and/or quantities that they do not have; and

      c.    Advertising goods with intent not to sell them as advertised.

60.    Defendant falsely stated, misrepresented, concealed, omitted, and/or suppressed material facts on the Class Products' labels as described above when it knew, or should have known, that the Class Products could not make the number of cups stated on the label.

61.    The acts and practices engaged in by Defendant, as set forth herein, constitute unfair business practices in violation of 815 ILCS § 505/1 et seq. because they: (a) offend public policy; (b) are immoral, unethical, oppressive, or unscrupulous; and/or (c) cause substantial injury to consumers.

62.     The aforesaid unfair acts and practices occurred in the course of conduct involving trade or commerce.

63.     Defendant intended that Plaintiff and the Illinois Class rely on the aforesaid unfair acts and practices.

64.     As set forth above, Plaintiff and the Illinois Class paid for products representing that they could make a specified number of cups of coffee with directions for using either one rounded tablespoon of coffee for each serving or eight tablespoons for ten servings.

65.     As set forth above, it was impossible for Plaintiff and the Illinois Class to make the specified number of cups of coffee on the label following the directions on the can.

66.     Thus, Plaintiff and the Illinois Class paid for products that advertised they could make a specified number of cups, but received products that did not make the specified number of cups for them.

67.     Defendant's misrepresentations caused Plaintiff and the Illinois Class to believe that they paid the fair market value for Kroger-brand coffee that could make the specified number of cups, and not the smaller quantity of servings that they actually got.  Thus, they paid more than the actual value of the coffee because they received Kroger-brand coffee that made far fewer than the specified number of cups.

68.     As a direct and proximate result of the aforesaid violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff and the Illinois Class have suffered an ascertainable loss of money and/or property in that they overpaid for the Class Products because they paid a price that was based on Defendant's material misrepresentations and concealments regarding the number of cups that can be made from the Class Products, in an amount to be proved at trial.

69.     Defendant continues to market, advertise, and sell the Class Products with the misleading disclosure of the number of cups that can be made from the Class Products.

70.     Defendant's aforesaid conduct was and continues to be wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and the Illinois Class and therefore warrants the imposition of punitive damages.

71.     Plaintiff and the Illinois Class have been forced to hire attorneys to enforce their rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff and the Illinois Class pray for the relief requested in the Prayer for Relief set forth below.

**COUNT II**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act**
**By Means of Deceptive Acts or Practices**
**[815 ILCS § 505/1 *et seq.*]**
**(On behalf of Plaintiff and the Illinois Class)**

72.     Plaintiff and the Illinois Class hereby incorporate and adopt by reference each and every allegation set forth above.

73.     Defendant's false statements, omissions, and misrepresentations described herein constitute deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material facts in connection with the sale of merchandise in Illinois.

74.     The acts and practices engaged in by Defendant, as set forth herein, constitute deceptive and/or fraudulent business practices in violation of 815 ILCS § 505/1 et seq.

75.     The aforesaid fraudulent and deceptive acts and practices occurred in the course of conduct involving trade or commerce.

76.     Defendant intended that Plaintiff and the Illinois Class rely on the aforesaid deceptive advertising, acts and practices.

77.    As set forth above, Plaintiff and the Illinois Class paid for products representing that they could make a specified number of cups of coffee with directions for using either one rounded tablespoon of coffee for each serving or eight tablespoons for ten servings.

78.    As set forth above, it was impossible for Plaintiff and the Illinois Class to make the specified number of cups of coffee on the label following the directions on the can.

79.    Thus, Plaintiff and the Illinois Class paid for products that advertised they could make a specified number of cups, but received products that did not make the specified number of cups for them.

80.    Defendant's misrepresentations deceived Plaintiff and the Illinois Class into believing that they paid the fair market value for Kroger-brand coffee that could make the specified number of cups, and not the smaller quantity of servings that they actually got.  Thus, they paid more than the actual value of the coffee because they received Kroger-brand coffee that made far fewer than the specified number of cups.

81.    As a direct and proximate result of the aforesaid violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff and the Illinois Class have suffered an ascertainable loss of money and/or property in that they overpaid for the Class Products because they paid a price that was based on Defendant's material misrepresentations and concealments regarding the number of cups that can be made from the Class Products, in an amount to be proved at trial.

82.    Defendant continues to market, advertise, and sell the Class Products with the misleading disclosure of the amount of cups that can be made from the Class Products.

83.    Defendant's conduct as aforesaid was and continues to be wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and the Illinois Class and therefore warrants the imposition of punitive damages.

84.     Plaintiff and the Illinois Class have been forced to hire attorneys to enforce their rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff and the Illinois Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT III
## Unjust Enrichment under Illinois Law
## (On behalf of Plaintiff and the Illinois Class)

85.     Plaintiff and the Illinois Class reallege and incorporate by reference, as though fully set forth herein, paragraphs 1- 52 of this Amended Complaint.

86.     Plaintiff and the Illinois Class conferred a monetary benefit on Defendant when they paid for the Class Products.

87.      As set forth above, Defendant knowingly misrepresented and concealed material facts in connection with their manufacturing, labeling, marketing, advertising, distribution, and sales of the Class Products.

88.     Defendant has retained Plaintiff's and the Illinois Class members' purchase prices despite their knowing misrepresentations and concealments on the Class Products' labels.

89.     As a result, Defendant is unjustly enriched at the expense of Plaintiff and the Illinois Class.

90.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Illinois Class that Defendant gained through deceptive and fraudulent material misrepresentations and omissions in the manufacturing, labeling, marketing, advertising, and sale of the Class Products.

91.      As a direct and proximate result of Defendant's conduct, Plaintiff and the Illinois Class overpaid for the Class Products because they paid a price that was based on Defendant's

21

material misrepresentations and concealments regarding the number of cups that can be made from the Class Products.

92.     Accordingly, Plaintiff and the Illinois Class seek full disgorgement and restitution of the amounts Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein, an amount which will be proved at trial.

WHEREFORE, Plaintiff and the Illinois Class pray for the relief requested in the Prayer for Relief set forth below.

**COUNT IV**
**Violation of the State Consumer Protection Statutes**
**(On behalf of Plaintiff and the Consumer Fraud Multi-State Class)**

93.     Plaintiff and the Consumer Fraud Multi-State Class reallege and incorporate by reference, as though fully set forth herein, paragraphs 1-52 of this Amended Complaint.

94.     Defendant's conduct as alleged herein violates the consumer protection statutes of each of the states encompassing the Consumer Fraud Multi-State Class.

95.     By misrepresenting and deceiving consumers as to the number of cups of coffee that can be made from the contents of the Class Products, a set forth herein, Defendant engaged in deceptive business practices prohibited by the consumer protection statutes of the states in the Consumer Fraud Multi-State Class.

96.     In the course of its business, Defendant willfully misrepresented and deceived consumers as to the number of cups of coffee that can be made from the contents of the Class Products, as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Products.

Defendant is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the consumer protection statutes of the states in the Consumer Fraud Multi-State Class.

97.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

98.    As alleged herein, Defendant knew and/or should have known of the misrepresentation as to the number of cups on its labels, while Plaintiff and the Consumer Fraud Multi-State Class were deceived by Defendant's labels into believing the Class Products could make more cups of coffee than was true, and this information could not have reasonably been known by the consumer.

99.    Defendant's unfair or deceptive acts or practices were likely to and did deceive reasonable consumers, including Plaintiff and the Consumer Fraud Multi-State Class, who relied on the statement on Defendant's labels about the number of cups of coffee that could be brewed from the contents of the Class Products.  Defendant intentionally and knowingly misrepresented material facts regarding the Class Products with an intent to mislead Plaintiff and the Consumer Fraud Multi-State Class.

100.    The number of cups of coffee that could be brewed from the contents of the Class Products that was represented on the label of the Class Products was material to Plaintiff and the Consumer Fraud Multi-State Class.  Had Plaintiff and the Consumer Fraud Multi-State Class known that the Class Products could not make as many cups of coffee as represented, they would have paid less for them than they did or would not have purchased them.

101.    Plaintiff and the Consumer Fraud Multi-State Class suffered ascertainable loss caused by Defendant's misrepresentations and deception as described herein. Plaintiff

and the Consumer Fraud Multi-State Class overpaid for their Class Products and did not receive the benefit of their bargain.  As the result of the misleading labels on the Class Products, which overstated the number of cups of coffee that could be made from their contents, the value of the Class Products was less than what Plaintiff and the Consumer Fraud Multi-State Class paid.

102.    As a direct and proximate result of Defendant's violations of the consumer protection statutes of the states in the Consumer Fraud Multi-State Class, Plaintiff and the Consumer Fraud Multi-State Class have suffered injury-in-fact and/or actual damage.

103.    Plaintiff and the Consumer Fraud Multi-State Class seek monetary relief against Defendant as provided under the consumer protection statutes of the states in the Consumer Fraud Multi-State Class, including actual, statutory, and/or treble damages.

104.    Defendant's aforesaid conduct was and continues to be wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and the Consumer Fraud Multi-State Class and, therefore, warrants the imposition of punitive damages.

105.    Plaintiff and the Consumer Fraud Multi-State Class have been forced to hire attorneys to enforce their rights.

WHEREFORE, Plaintiff and the Consumer Fraud Multi-State Class pray for the relief requested in the Prayer for Relief set forth below.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, seeks the following relief:

A.    An order certifying the Illinois Class and/or Consumer Fraud Multi-State Class pursuant to Fed. R. Civ. P. 23, designating Plaintiff as the class representatives and his counsel as class counsel;

B.      An award of actual and/or compensatory damages, treble damages, and/or statutory damages as may be authorized by Illinois law and/or the consumer protection statutes of the states encompassing the Consumer Fraud Multi-State Class;

C.      An award of restitution and/or disgorgement, as may be authorized by Illinois law and/or the consumer protection statutes of the states encompassing the Consumer Fraud Multi-State Class;

D.      An award of exemplary or punitive damages as may be authorized by Illinois law and/or the consumer protection statutes of the states encompassing the Consumer Fraud Multi-State Class, in an amount to punish Defendant's egregious conduct as set forth above and to deter Defendant and others from engaging in similar conduct;

E.      An award of attorneys' fees and costs, as allowed by law;

F.      An award of pre- and post-judgment interest, as allowed by law; and

G.      Such further relief as may be just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 1, 2024                    Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

 */s/ Kevin P. Green*
Thomas P. Rosenfeld #06301406
Kevin P. Green #06299905
Richard S. Cornfeld, #0519391
Daniel S. Levy, #6315524
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
tom@ghalaw.com
kevin@ghalaw.com
rick@ghalaw.com
daniel@ghalaw.com

**ARIAS SANGUINETTI WANG & TEAM LLP**

Mike Arias*
M. Anthony Jenkins*
*(motion for pro hac vice admission to be filed)
6701 Center Drive West, 14th Floor
Los Angeles, CA 90045
T: (310) 844-9696
F: (310) 861-0168
mike@aswtlawyers.com
anthony@aswtlawyers.com

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2024, the foregoing was filed with the Court Clerk via the Court's electronic filing system and served on upon all counsel of record via the Court's electronic notification system.

<u>/s/ Kevin P. Green</u>