IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY WOMICK, individually and on behalf of similarly situated individuals,<br><br>   Plaintiff,<br><br>v.<br><br>THE KROGER CO.,<br><br>   Defendant. | Case No. 3:21-CV-0574-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Plaintiff Anthony Womick ("Womick") brings this putative class action against The Kroger Co. ("Kroger") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23. Through a First Amended Class Action Complaint (the "Complaint"), Womick claims that Kroger engaged in unfair and deceptive business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1, *et. seq.*, and similar consumer protection statutes of other states, by misrepresenting the number of cups of coffee that can be brewed from select Kroger-brand ground coffee products. (Doc. 68).

  Now before the Court is Kroger's Partial Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (the "Motion"). (Doc. 73). Chiefly, Kroger takes the position that Womick lacks Article III standing to pursue claims on behalf of putative class members (i) concerning products Womick did not himself purchase and (ii) under the laws of states in which he neither resides nor ever purchased any of the products at issue.

## BACKGROUND

The following facts, as alleged in the Complaint, are accepted as true for purposes of the ensuing review.

Womick is a citizen of Illinois, and Kroger is a citizen of Ohio—its state of incorporation and the location of its principal place of business. (Doc. 68 at 4; *see* Doc. 1 at 4). Kroger manufactures, packages, advertises, distributes, and sells various types of ground coffee in canisters under its private-label brand. (Doc. 68 at 5). The canisters represent that the number of cups of coffee varies depending on the size of the container:

(i)   The 11.5-ounce (326 g) canisters represent they can make about 90 cups.
(ii)  The 24-ounce (680 g) canister represent they can make about 185 cups.
(iii) The 25-ounce (708 g) canisters represent they can make about 195 cups.
(iv)  The 29-ounce (822 g) canisters represent they can make about 225 cups.
(v)   The 30.5-ounce (864 g) canisters represent they can make about 235 cups.

(*Id.* at 6-8). Brewing instructions printed on the back of the canisters provide two preparation methods: (i) to brew one cup, consumers are instructed to use one rounded tablespoon of coffee per six fluid ounces of cold water; and (ii) to brew ten cups, consumers are instructed to use one half cup of coffee. (*Id.* at 8).

Womick alleges that Kroger's representations are false, even when following its own brewing instructions. (*Id.* at 8-10). Specifically, he asserts that the 30.5-ounce canister, when used in accordance with the one-tablespoon method, yields no more than—and likely fewer than—173 cups of coffee, rather than the 235 cups claimed on the label. (*Id.* at 9-10). Womick provides the following chart comparing the represented and actual yields (based on a 5-gram tablespoon), and the resulting shortfall:

| Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 11.5 oz. | 90 cups | 65 cups | 25 cups |
| 24 oz. | 185 cups | 136 cups | 49 cups |
| 25 oz. | 195 cups | 141 cups | 54 cups |
| 29 oz. | 225 cups | 164 cups | 61 cups |
| 30.5 oz. | 235 cups | 173 cups | 62 cups |

(*Id.* at 10).

Womick also alleges that, under Kroger's ten-cup brewing instructions, the products again fail to deliver the stated number of servings. (*Id.*). Assuming one tablespoon of ground coffee weighs five grams, a half cup of ground coffee would weigh 40 grams, or eight tablespoons. Based on this metric, Womick provides a second chart comparing the stated and actual yields using the ten-cup method:

| Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 11.5 oz. | 90 cups | 81.5 cups | 8.5 cups |
| 24 oz. | 185 cups | 170 cups | 15 cups |
| 25 oz. | 195 cups | 177 cups | 18 cups |
| 29 oz. | 225 cups | 205.5 cups | 19.5 cups |
| 30.5 oz. | 235 cups | 216 cups | 19 cups |

(*Id.*).

Womick purchased Kroger's 29-ounce and 30.5-ounce canisters regularly between 2020 and 2021. (*Id.* at 14). Prior to purchase, he reviewed the product labels, including the stated number of cups, and relied on those representations. (*Id.*). Womick typically followed Kroger's ten-cup brewing instructions. (*Id.*). According to Womick, as a result of the ostensible misrepresentations, he was deprived of the benefit of his bargain because the products provided less value than represented. (*Id.* at 15).

This case was removed from the Circuit Court for the Third Judicial Circuit in Madison County, Illinois, pursuant to the Class Action Fairness Act of 2005 ("CAFA"),

28 U.S.C. § 1332(d)(2). Under CAFA, federal jurisdiction is proper where the proposed class includes more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million, exclusive of interest and costs. *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 625 (7th Cir. 2023) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

Womick seeks to represent two putative classes. The first consists of Illinois citizens who purchased one or more of the products at issue during the class period—that is, the time within the applicable statute of limitations through the date of class certification—within the State of Illinois (the "Illinois class"). (*Id.* at 15-16). The second includes citizens of Illinois and 22 other states with "similar consumer fraud laws," who purchased any of the products at issue during the same period (the "multi-state class"). (*Id.*). Womick alleges that "[t]here are at least 100 Class Members" and that the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. (*Id.* at 4). Individually and on behalf of the putative Illinois class, Womick asserts three claims against Kroger: (i) violation of the ICFA through unfair business practices; (ii) violation of the ICFA through deceptive acts or practices; and (iii) unjust enrichment. (*Id.* at 18-24). Womick also alleges, individually and on behalf of the putative Multi-State Class, violations of the consumer protection laws of the relevant states. (*Id.* at 24-26).

Kroger timely filed the Motion, arguing that Womick lacks Article III standing to assert claims related to products he did not personally purchase and similarly cannot represent class members in states where he neither resides nor purchased any products. (Doc. 73 at 2, 4-9). Womick filed a response, contending that the issues Kroger raises are either already resolved or properly addressed at the class certification stage (Doc. 75 at 11-23), and that any state procedural prerequisites are displaced by the Rule 23 of the Federal Rules of

Civil Procedure (*id.* at 23-27). Kroger replies that this Court has not yet ruled on the standing issue concerning unpurchased products and urges the Court to follow more recent decisions rejecting the substantially similar injury theory (*see* Doc. 76 at 2-4), while also maintaining that Rule 23 does not displace state-law procedural prerequisites in this context (*see id.* at 5-6).

## LEGAL STANDARDS

### A.   Rule 12(b)(1) Motion to Dismiss

When evaluating a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must distinguish between facial and factual challenges to jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A factual challenge disputes the truth of the jurisdictional facts themselves, even assuming the pleadings are adequate. *Id.* A facial challenge, by contrast, accepts the pleaded facts as true but argues that they fail to establish jurisdiction as a matter of law. *Id.*

Here, because Kroger challenges the sufficiency of the pleadings to establish standing, it raises a facial challenge to subject matter jurisdiction under Rule 12(b)(1). Where a defendant brings a facial challenge, courts apply the same plausibility standard used under Rule 12(b)(6)—that is, the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). *See Silha*, 807 F.3d at 174 (collecting cases). The court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 173 (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). It then must be determined whether those allegations "plausibly give rise to an entitlement of relief." *Id.* at 174 (quoting *Iqbal*, 556 U.S. at 679).

**B.     Article III Standing**

Federal courts are courts of limited jurisdiction, and Article III of the Constitution confines their authority to adjudicating "actual cases or controversies." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). This requirement reflects the "constitutionally limited role of adjudicating actual and concrete disputes[,]" the resolution of which will "have direct consequences on the parties involved." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 733–34 (7th Cir. 2023) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)).

An essential component of this constitutional limitation is the doctrine of standing, which requires that a plaintiff have a "personal stake" in the outcome of the litigation sufficient to invoke federal judicial power. *Id.* at 734 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). As the Supreme Court has framed the inquiry, a plaintiff must be able to answer the question: "What's it to you?" *TransUnion*, 594 U.S. at 423 (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers* 882 (1983)) (quotations omitted).

To establish Article III standing, a plaintiff must show: (i) an injury in fact that is concrete, particularized, and actual or imminent; (ii) a causal connection between the injury and the challenged conduct; and (iii) a likelihood that the injury will be redressed by a favorable decision. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (quoting *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 540 (2020)) (quotations omitted).

A "concrete" injury is one that is real, not abstract, and a "particularized" injury is one that affects the plaintiff in a personal and individual way. *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 877 (7th Cir. 2020). The injury must also be actual or imminent, not conjectural

or hypothetical. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

## DISCUSSION

### A.  Claims Involving Unpurchased Products

Kroger contends that Womick lacks Article III standing to pursue claims on behalf of the putative Illinois class concerning products that he did not personally purchase, on the ground that he fails to demonstrate an "injury in fact" traceable to the ostensible misrepresentations made on those unpurchased products. (Doc. 73 at 4-7).

In addressing Kroger's motion to dismiss Womick's initial class action complaint, this Court observed that a class representative who purchased one product may have standing to represent putative class members who purchased different products where the injuries alleged are "substantially similar." (Doc. 27 at 9 n.1 (citing *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 699 (N.D. Ill. 2020))). While Kroger now suggests that this observation was not dispositive because it appeared in the context of addressing a different issue (*see* Doc. 76 at 2), the statement directly addressed the question now before the Court—namely, Womick's standing to represent putative class members asserting claims based on products he did not purchase.[1] In that discussion, this Court expressly adopted the view that, in certain circumstances, a named plaintiff may assert claims on behalf of purchasers of different products, so long as the alleged injuries are substantially similar.

---

[1] Because Kroger's argument appears to conflate individual standing with standing to represent a class, the Court takes this opportunity to clarify the nature of the inquiry at issue. The question is *not* whether Womick has individual standing to assert claims based on products he did not purchase, but whether he has class standing on behalf of putative class members who purchased different products but suffered substantially similar injuries. *See Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650, 657–58 (N.D. Ill. 2024). The Complaint does not allege—nor does the Court understand Womick to assert—that he personally suffered an injury traceable to representations on unpurchased products. Rather, any alleged harm relating to those products pertains solely to Womick's capacity to represent others under Rule 23. The footnote in question (Doc. 27 at 9 n.1) clearly addressed the issue in this context—that is, whether Womick has standing to assert class claims on behalf of others, not whether he has individual standing to sue over products he never purchased.

Kroger further urges the Court to follow decisions issued after the footnote in question that expressly rejected the substantially similar injury exception—most notably, *Jackson v. Dole Packaged Foods, LLC*, 648 F. Supp. 3d 1039 (S.D. Ill. 2022) (Dugan, J.). (*See* Doc. 73 at 4-7; Doc. 76 at 2-4). According to Kroger, these authorities reinforce the view that Article III's injury-in-fact requirement does not provide an exception based on substantial similarity of injuries. (*See id.*).

The Court remains persuaded that permitting a named plaintiff to assert claims involving unpurchased products where the alleged injuries are substantially similar strikes an appropriate balance between the constitutional limits of Article III and the procedural mechanisms of Rule 23. *See Geske*, 503 F. Supp. 3d at 700 (N.D. Ill. 2020) ("Allowing a named plaintiff to bring claims on behalf of others with substantially similar injuries allows courts to bundle cases about the same basic practice. . . . And later, when considering a motion for class certification, courts can weed out claims if the class representative is not sufficiently similar to members of the putative class.") (internal citation omitted). "If the named plaintiff has standing, and if the putative class members would have standing in their own right, then there does not appear to be any Article III problem with the named plaintiff representing the class." *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *8 (N.D. Ill. Sept. 13, 2022).

**B.     Claims Arising Under Other States' Consumer Protection Statutes**

Kroger also contends that Womick, as a resident of Illinois who purchased Kroger's products only in Illinois, lacks standing to bring claims on behalf of the putative multi-state class under the consumer protection statutes of states in which he neither resides nor personally suffered an injury. (Doc. 73 at 7-9; *see also* Doc. 76 at 4-6).

Womick, in response, takes the position that this issue implicates class certification,

rather than Article III standing, and should therefore be addressed at the Rule 23 stage rather than on a motion to dismiss. (Doc. 75 at 18–21).

Indeed, this is fundamentally a question of whether Womick, as the named plaintiff, may adequately represent a multi-state class whose unnamed members assert claims under the laws of various states—an inquiry governed by Rule 23's requirements of adequacy, typicality, and commonality, not by constitutional standing. *See Shirley v. Reynolds Consumer Prods., LLC*, 636 F. Supp. 3d 907, 914 (N.D. Ill. 2022); *see also Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 536 (2011) ("There's no problem with standing. Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision. . . . Nothing more is required for standing.") (internal citation omitted). Because class certification is "logically antecedent" to Article III concerns, courts may resolve class certification before addressing standing—particularly where the outcome may affect the standing analysis. *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 451 (S.D.N.Y. 2010); *see also Connor v. Abbott Lab'ys, Inc.*, 2023 WL 2690853, at *5 (S.D. Ill. Mar. 29, 2023) ("Any standing issues arising from [plaintiff's] attempt to represent the proposed multi-state class are class certification issues that will be addressed during the class certification stage of this litigation.") (Yandle, J.).

Accordingly, the Court declines to resolve this issue at the pleading stage. Kroger's challenge to Womick's ability to represent class members asserting claims under other states' consumer protection statutes will be addressed, if necessary, at the class certification stage.

## Conclusion

For these reasons, the Court concludes that Plaintiff Anthony Womick has adequately alleged Article III standing to pursue claims on behalf of the putative class with respect to the

products he did not personally purchase insofar as the injuries alleged are substantially similar. The Court further concludes that whether Womick may assert claims on behalf of the putative multi-state class under the consumer protection statutes of states other than Illinois raises class certification questions that are premature at the pleading stage.

Accordingly, the Partial Motion to Dismiss filed by Defendant The Kroger Co. (Doc. 73) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** July 28, 2025

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**